**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LEONARD EUGENE TANNER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ASATOR GLOBAL TECHNOLOGIES, LLC, 540 COBALT, LLC, DAVID HOPKINS, PATRICIA HOPKINS, STEVE BRILLION,<br><br>Defendants.<br>_______________<br><br>540 COBALT, LLC, DAVID HOPKINS, ASATOR GLOBAL TECHNOLOGIES, LLC, PATRICIA HOPKINS,<br><br>Counter Claimants,<br><br>v.<br><br>2010 THOMAS D. LANE REVOCABLE TRUST, *et al.*,<br><br>Counter Defendants. | ) | Case No. 1:25-cv-00591-TWP-MG |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant Steve Brillion's ("Brillion") Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 39). Plaintiffs Leonard Eugene Tanner, The Christopher Cleveland Revocable Trust, Mack P. McKinzie Revocable Trust, MP McKinzie & Company LLC, 2010 Thomas D. Lane Revocable Trust, Jeffrey S. Cohen Revocable Trust dated 04/06/1998 As Amended, Michael and Terra Aguirre JTWROS, BWR Holdings, LLC, Rapp Properties, L.P., George F. Rapp Charitable Lead Annuity Trust II 07/16/2009, Jim and Patty Irrevocable Family Trust 10/01/2006, The James D. Rapp Revocable Trust Agreement

04/16/1998, John G. Rapp Revocable Trust 12/11/2003, John G. Rapp 2022 Irrevocable Trust for Grandchildren, and 2022 Irrevocable Trust for Sontag Children (collectively, "Plaintiffs") initiated this action against Defendants Asator Global Technologies, LLC ("Asator"), 540 Cobalt, LLC ("Cobalt"), David Hopkins ("Hopkins"), Patricia Hopkins, and Brillion (collectively, "Defendants") alleging various claims of securities fraud, fraud, and breach of fiduciary duties under state law (Filing No. 1-1 at 12–40). Defendant Brillion seeks dismissal of the claims pending against him. For the reasons discussed below, the Court concludes that it does not have personal jurisdiction over Brillion, and his Motion is **granted.**

## I. BACKGROUND

As required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Brillion as the non-moving party. *See Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Defendant Asator was founded under its former name, 540 Grid Solutions, LLC in 2014 (Filing No. 1 at 18 ¶ 35). The largest member was Defendant Cobalt, controlled by Defendant Hopkins. *Id.* ¶¶ 36–38. With a controlling stake in Asator, Hopkins became Asator's sole manager until June 9, 2023. *Id.*

Certain Plaintiffs invested in Asator, acquiring membership units that constituted unregistered securities (the "Securities Plaintiffs").[1] *Id.* at 19 ¶ 40. The Securities Plaintiffs invested directly in Asator in exchange for membership units that constitute unregistered securities. Most, but not all, of the Securities Plaintiffs acquired the membership units during the

[1] These Plaintiffs include Leonard Eugene Tanner; The Christopher Cleveland Revocable Trust; Mack P. McKinzie Revocable Trust; MP McKinzie & Company LLC; 2010 Thomas D. Lane Revocable Trust; Jeffrey S. Cohen Revocable Trust Dated 04/06/1998 As Amended; Michael and Terra Aguirre JTWROS; BWR Holdings; LLC, Rapp Properties, L.P.; George F. Rapp Charitable Lead Annuity Trust II 07/16/2009; Jim and Patty Irrevocable Family Trust 10/01/2006; The James D. Rapp Revocable Trust Agreement 04/16/1998; John G. Rapp Revocable Trust 12/11/2003.

fourth quarter of 2018 or the first quarter of 2019. *Id*. All the Securities Plaintiffs acquired the securities following the receipt of investment materials containing misrepresentations and omissions. *Id*.

Other plaintiffs made loans in Asator, via Cobalt (the "Loan Plaintiffs").[2] *Id*. ¶ 41. The Loan Plaintiffs made a total of $2 million in loans to Asator using promissory notes executed between the Loan Plaintiffs and Cobalt in January 2022. *Id*. ¶ 42. All Loan Plaintiffs made the loans after receiving investment materials. *Id*.

Plaintiffs allege that Hopkins has been misappropriating their funds for his own personal use. *Id*. at 22 ¶ 62. For example, Hopkins unilaterally paid himself in "loans" from Asator, listing them as accounts receivable on Asator's books and tax returns, which he signed under the penalty of perjury. *Id*. ¶¶ 63–67. He claimed that the "loans" were "compensation" that he had no intention of paying back. *Id*. The "loans" would constitute Asator's largest assets. Hopkins was fully aware of Plaintiffs' complaints regarding the investments and loans made to Asator. *Id*. at 23 ¶ 70. Specifically, in 2022, Hopkins was told, "It's now been four years since you brought in the Indianapolis-centric group as investors. Four years and no revenue. Four years and no financial statements/detailed cash flows, no transparency and no corporate governance." *Id*. Still, Hopkins continued to divert Plaintiffs' funds for personal purposes rather than to partially repay investors. *Id*.

The Securities Plaintiffs and Loan Plaintiffs invested in and made loans to Asator in December 2018, February 2019, June 2021, January 2022, and January 2023. *Id*. ¶ 71. During all relevant time periods, Mike Miles ("Miles") was a "finder" who raised money for Asator. *Id*. at 19

[2] These Plaintiffs include Leonard Eugene Tanner, 2010 Thomas D. Lane Revocable Trust, Rapp Properties, L.P., The James D. Rapp Revocable Trust Agreement 04/16/1998, John G. Rapp Revocable Trust 12/11/2003, John G. Rapp 2022 Irrevocable Trust for Grandchildren, and 2022 Irrevocable Trust for Sontag Children. Some of these plaintiffs are also Securities Plaintiffs.

¶ 43. Miles provided investment materials to the Plaintiffs, including a Private Placement Memorandum, pitch deck (the "Presentation"), valuation deck, cap tables, and financial forecasts. *Id*. at 23 ¶ 72–73. The investment materials misrepresented that Asator would soon be awarded multiple large contracts or grants.[3] *Id*. at 24 ¶ 76.

The Presentation was also full of material falsehoods.[4] *Id*. at 24 ¶ 79, 46–82. The Presentation misrepresented that Asator's technology had been validated by outside testing by the Boeing Company ("Boeing"). *Id*. at 52. In fact, the Boeing test did not validate the technology. *Id*. at 26 ¶ 88. Asator's own engineers concluded that the test was a false positive because it did not accurately represent real world conditions for any application of the technology. *Id*. The engineers also determined that the test could not be replicated in any subsequent testing environments. *Id*. In February 2018, Keystone Compliance Laboratories ("Keystone Lab") repeated the test on the same unit used by Boeing. *Id*. ¶ 92. Keystone Lab's test was a failure. *Id*. ¶ 93. In the Presentation, Hopkins did not disclose Keystone Lab's test failure and did not disclose that Asator's technology was neither validated, nor workable. *Id*. at 15 ¶ 94, pp. 46–82.

Brillion, Asator's Chief Financial Officer ("CFO"), was responsible for preparing Asator's Private Placement Memorandum (the "Memo"). *Id*. at 27 ¶ 100. The Memo was one of the critical investment documents distributed to Plaintiffs to induce their investments. *Id*. Plaintiffs allege that in the Memo, Brillion misrepresented the significance of an issued patent, as well as patent applications, knowing that neither supported the efficacy nor functionality of Asator technology. *Id*. at 28 ¶ 102. Brillion also knowingly omitted material information, including the Keystone Lab

---

[3] Specifically, the investment materials represented to Plaintiffs that Asator would win a $31.5 million contract with National Center for Complex Operations ("NCCO") in early 2019.

[4] In the Presentation, Hopkins misrepresented that Asator would be "receiving $45 million for multi-threat grid equipment [orders] in Q1 2019," and the U.S. Department of Defense "Navy pilot and triaged Rapid Acquisition Contracts [would be] starting in Q2 2019."

test failure and the fact that Hopkins had been permanently prohibited from selling securities by the State of Illinois due to fraud. *Id*. at 21–22 ¶¶ 54–61, 28 ¶ 103. Plaintiffs relied on the Memo when deciding to invest in Asator securities. *Id*. at 28 ¶ 104.

There is companion litigation pending between several of the parties to this litigation in Arizona. (Filing No. 40 at 2). Brillion argues that this Court lacks personal jurisdiction over him, because he did not direct his activities to the state of Indiana and did not personally avail himself of the benefit of Indiana's laws (Filing No. 39 at 2 ¶ 3). Brillion argues that even if this Court finds sufficient minimum contact between him and Indiana, the exercise of personal jurisdiction while there is companion litigation between several of the parties to this litigation in Arizona would be unreasonable and not comport with the traditional notions of "fair play and substantial justice." *Id*. ¶ 4.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(2)

Federal Rule of Civil Procedure Rule 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When deciding a Rule 12(b)(2) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff if they weigh on personal jurisdiction. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001). If the complaint, however, consists of conclusory allegations unsupported by factual allegations, the complaint fails the liberal standard of Rule 12(b). *Id*. The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The extent of a plaintiff's burden is dependent upon the method by which the court

determines the issue of personal jurisdiction. *Id*. "When the . . . court holds an evidentiary hearing to determine [personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence." *Id*. But where, as here, the court determines personal jurisdiction based only on reference to submissions of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

In determining whether the plaintiff has met the prima facie standard, the plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). If the defendant has submitted evidence in opposition to the implementation of jurisdiction, however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782–83. This evidence submitted by the defendant may include affidavits, unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant. *Id.* at 783 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

**B. Transfer**

"When federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case." *North v. Ubiquity*, *Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). Section 1631 provides in relevant part that whenever a court finds that there is a "want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action on appeal to any other [] court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

## III. DISCUSSION

### A. Personal Jurisdiction

Personal Jurisdiction over an out-of-state defendant permitted by the Due Process Clause arises in two forms: general personal jurisdiction, which allows a court to "hear any and all claims against [out-of-state defendants] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state," *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); and specific personal jurisdiction, which is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

#### 1. General Personal Jurisdiction

The Complaint does not allege that Brillion or Asator has offices, employees, or property in Indiana, so there is no basis for general jurisdiction. Brillion has been a resident of Texas since May 2020 and maintains a residence in Wisconsin (Filing No. 39 at 2 ¶ 2). He has never been a resident of Indiana, has not been to Indiana in over 10 years, and has only had sporadic contact with Indiana in the past 15 years. (Filing No. 39-1 at 3). Brillion does not own a home or any other real property in Indiana, has never maintained a bank account in Indiana, has not paid taxes in Indiana, has not registered to vote in the State, does not possess an Indiana license, and has no agent for service of process or for any other purpose in Indiana. *Id.* Brillion worked at Asator from January 1, 2017 to October 3, 2019. *Id*. As a condition of his employment at Asator, he was required to move to Mesa, Arizona. While he worked at Asator, Brillon performed his work in and lived in Mesa, Arizona. *Id*.

**2. Specific Personal Jurisdiction**

To establish specific personal jurisdiction, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *In'l Shoe*, 326 U.S. at 316). The United States Supreme Court has held that "critical to due process analysis" is "foreseeability," specifically whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

**a. Preparation of Investment Documents**

Plaintiffs argue that this Court has personal jurisdiction over Brillion because he was responsible for preparing two key investment documents that were used to induce them to invest in Asator (Filing No. 47 at 2). They contend that Brillon's omission of critical information, material misrepresentations, and execution of "subscription agreements" with Indiana investors created ongoing obligations between Asator and the Indiana investors. *Id*. To prove that Brillion's conduct was purposefully directed toward Indiana, plaintiffs must point to allegations in their complaint that show (1) Brillion's conduct was intentional; (2) expressly aimed at Indiana; and (3) done with knowledge it would cause injury in Indiana. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010).

None of the Plaintiffs' allegations show that Brillion intentionally directed any conduct towards Indiana. The "express aiming" test focuses on "whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia*

*Assocs. Of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010). Brillion's involvement in drafting the Memo occurred exclusively in Arizona where he worked (Filing No. 56 at 5). The Memo contains no language indicating that it was drafted with Indiana in mind. *Id.* However, the Memo *did* contain state-specific disclosures for several other states. *Id.* Brillion was not the one who gave the Memo to the Plaintiffs. According to the Plaintiffs, it was Mike Miles who was "[the] 'finder' who raised money for Asator." *Id.* But Miles' actions cannot be attributable to Brillion for the purpose of establishing his minimum contacts with Indiana. *In re Sheehan*, 48 F.4th 513, 523 (7th Cir. 2022) (citing *Walden v. Fiore,* 571 U.S. 277, 284 (2014)) ("[S]pecific personal jurisdiction cannot depend solely on the actions of the plaintiff or third parties."). Brillion's involvement with the Memo was limited to drafting, which has no connection to the state of Indiana (Filing No. 56 at 5).

While the Plaintiffs allege that "Brillion knew and intended that these critical investment documents would land in the hands of Indiana investors[,]" (Filing No. 47 at 4), United States Supreme Court precedent makes it clear that it is "the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Sheehan*, 48 F.4th at 523 (citing *J. McIntyre Mach., Ltd. V. Nicastro*, 564 U.S. 873, 883 (2011)). The fact that harm in the forum state was allegedly foreseeable does not change this analysis. *Id.* at 524–25.

**b. Solicitations**

The Plaintiffs next allege that:

> Brillion, in his personal capacity and through Asator, had continuous, systematic, and substantial contacts with Indiana due to persistent fundraising efforts and solicitations of Indiana residents. For example, Brillion is believed to have executed subscription documents and stock certificates with Indiana investors, including Plaintiffs.

(Filing No. 1 at 17 ¶33).

These allegations do not show that Brillion targeted the state of Indiana. Instead, they merely show a connection between Brillion and the Plaintiffs themselves, which is not the sort of "contact" that can create specific personal jurisdiction. *Walden*, 571 U.S. at 285 ("'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."). As an example of "solicitation", Plaintiffs proffer that Brillion signed "subscription documents and stock certificates" that "were not 'one-shot transactions'" but instead "created 'continuing obligations'" and "resulted in 'contemplated future consequences[.]'" (Filing No. 47 at 6–7). But even if the documents drafted by Brillion are viewed as agreements between the parties, that still does not demonstrate an ongoing relationship. Subscription agreements are merely agreements to purchase stock. *See* Black's Law Dictionary (12th ed. 2024) (Defining a subscription agreement as, "A written contract to purchase newly issued shares of stocks or bonds. Also termed (in connection with stock) stock subscription."). A single stock purchase transaction does not create an ongoing relationship between two parties. Moreover, it is generally recognized that stock certificates are typically insufficient to establish minimum contacts for the purposes of personal jurisdiction. *See Central States, SE & SW Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 943 (7th Cir. 2000) (discussing whether a stock certificate is evidence of connection with the forum state for the holder).

Plaintiffs point the Court to *In re Trade Partners, Inc., Invs. Litig.*, which involved lawsuits filed in California, Oklahoma, and Texas alleging that the defendants, Trade Partners Inc. ("TPI") and Macatawa Bank ("Macatawa")—located in Michigan—had jointly engaged in a fraudulent investment scheme. 532 F. Supp. 2d 904, 904, 918, 920 (W.D. Mich. 2007).[5] The district court

[5] In each lawsuit, the Michigan company had moved to dismiss for lack of personal jurisdiction, and the pretrial proceedings were consolidated. *Id*. at 907. The district court of the Western District of Michigan was thus responsible for determining whether California, Oklahoma, and Texas could exercise specific personal jurisdiction over the Michigan company. *Id*.

determined that each state had specific jurisdiction over Macatawa because the bank had knowingly marketed TPI's products, met with TPI sales representatives, acted as an escrow agent, and created continuing ongoing relationships through escrow agreements with other states' residents. *Id.* at 912–13, 915–17. The district court held that it was immaterial that the agreements were signed in Michigan "because the activity before and after the signing indicates that Macatawa established and then maintained contacts with California." *Id.* at 913. The court also concluded that the fraud-based claims were "related to" or "connected with" either the bank's marketing activities or the continuing relationships created through escrow agreements. *Id.* at 914, 918, 920.

Here, Brillion is far less integral to the Asator scheme than Macatawa was to TPI's. In *In re Trade Partners*, the California plaintiffs alleged that Macatawa,

> [P]articipated in the marketing of TPI's products, acted as escrow agent, performed bank activities essential to the operation of TPI's products, and acted as the co-trustee of the TPI Grand Trust, which was the beneficiary of record for most of the viaticated insurance policies. Macatawa reviewed TPI's marketing materials that describe Macatawa's role in TPIs products. An officer in Macatawa's trust department . . . appeared in a marketing video produced by TPI. Individuals who sold TPI products in California traveled to Michigan and met with representatives of TPI and Macatawa. From the circumstances of these meetings, Macatawa would have understood that these individuals were from California and that they would use the information Macatawa provided to market TPI's products, including Macatawa's escrow services, to California residents. Macatawa was a party to over eighty escrow agreements with California residents. . . As a part of each . . . transaction, Macatawa accepted deposits from California residents.

*Id.* at 911–912. The plaintiffs in Oklahoma and Texas made identical allegations concerning Macatawa's conduct towards their respective states. *Id*. at 915, 918–19.

In contrast, Brillion did not create or review any "marketing materials" for Asator, did not provide those materials to anyone in Indiana, and did not appear in any promotional materials for the company (Filing No. 56 at 9). He did not set up escrow accounts or provide services to any Indiana resident. *Id.* He did not travel out of state to meet with sales representatives, nor did he

meet with sales representatives who traveled to Arizona to meet with Asator. Brillion was not in any way a beneficiary of the alleged scheme.

It is apparent that Brillion is not the primary target of this action, he has never worked or resided in Indiana, and his largely administrative role at Asator did not bring him into contact with the State of Indiana during his employment. Accordingly, the Court finds that it lacks personal jurisdiction over Brillion and his Motion to Dismiss For Lack of Personal Jurisdiction (Filing No. 39) is **granted**.

**B. Transfer**

Neither the Plaintiffs nor Brillion addressed in their initial briefing the issue of whether—if personal jurisdiction is found to be lacking—the court should transfer Plaintiff's claims against Brillion; and if so, to what district. Accordingly, the Court ordered the parties to provide additional briefing on that issue alone (Filing No. 89). Brillion filed his response on June 11, 2026 (Filing No. 91), and the Plaintiffs filed a notice of Asator's bankruptcy in lieu of their response on June 25, 2026 (Filing No. 94). The Court will address Asator's bankruptcy and its relevancy to the instant Motion before turning to whether transfer is appropriate.

**1. The Bankruptcy Stay Applies to Asator Only**

"Due to [Asator's] Bankruptcy filing," Plaintiffs have chosen not to argue on the issue of transfer (Filing No. 94 at 2). Instead, they state that "until [they] have direction from the bankruptcy court regarding whether this matter is stayed as to all of the other parties, and/or there is an agreement reached among the parties, [they] believe that the stay applies" to Brillion. *Id*.

The Plaintiffs' belief is mistaken. Asator filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code (Filing No. 94-1 at 2). Section 362 provides in relevant part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay applicable to all entities of (1) The

> commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other proceeding against *the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against a debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a) (emphasis added).

"The clear language of Section 362(a)(1) thus extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants. This interpretation has been adopted by several reviewing courts." *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) (citing *In Re: Related Asbestos Cases*, 23 B.R. 523 (N.D. Cal. 1982); *Clutter v. Johns-Manville et al.*, No C-78-1229 (N.D. Ohio August 2, 1982); *Royal Truck & Trailer v. Armadora Martina Salvadorean*, 10 B.R. 488 (N.D. Ill. 1981); *In re Smith*, 14 B.R. 956 (Bkrtcy D. Conn. 1981); *In Re Aboussie Bros. Const. Co.*, 8 B.R. 302, 2 C.B.C.2d 684 (E.D. Mo. 1981)).

Additionally, the legislative intent surrounding the U.S. Bankruptcy Code does not support Plaintiffs' argument. In *Royal Truck,* the court examined the Congressional intent surrounding the Bankruptcy Code and highlighted the distinction between Chapter 13 and Chapter 11 of the Code. *Royal Truck*, 10 B.R. 488. "Congress' decision to specifically provide for stays against co-debtors under the New Code's Chapter 13 provisions and Congress' apparent decision to not provide for similar relief under Chapter 11 lends further support to this court's conclusion that the automatic stay provisions in s 362(a) operated in favor of the bankrupt [defendant] only and not in favor of a co-debtor[.]" *Id.*

Thus, Asator's bankruptcy stay does not apply to their claim against Brillion. Because Plaintiffs fail to establish that transfer would be in the interest of justice, their claims against Brillion are **dismissed**. *See North v. Ubiquity, Inc.*, 72 F.4th at 228 (affirming dismissal because

the plaintiff did not develop the record with evidence establishing that transfer would be in the interest of justice).

**2. Transfer is not otherwise in the interest of justice.**

When a district court finds that it lacks personal jurisdiction, the court "bear[s] an independent obligation under [28 U.S.C.] § 1631 to consider whether to transfer the case—even if neither party requests transfer." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023). 28 U.S.C. § 1631 provides that, whenever a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court ... in which the action ... could have been brought at the time it was filed."

Even if Plaintiffs had provided argument that transfer was in the interest of justice, Brillion argues persuasively that dismissal, rather than transfer, is in the interest of justice and therefore, the appropriate remedy. Brillion argues that dismissal of the claims against him is proper because Asator and Cobalt are Wyoming companies, the Hopkins's reside in Arizona, and Brillion resides in either Wisconsin or Texas and resided in Arizona while working for Asator (Filing No. 1-1 at 20–21). Thus, he contends that "there is no district in which this case could have been 'originally' filed, and no federal court has general personal jurisdiction over all Defendants on this record." (Filing No. 91 at 2). Brillion also argues that transfer is not warranted "because the statutory text and the interests of justice require that the *entire* case be transferred." (Filing No. 91 at 3).

When the record does not clearly establish that transfer is possible, dismissal is the result that better promotes the interest of justice. *See Saeed & Little, LLP v. Hogshead-Makar*, No. 1:23-cv-01647, 2024 WL 4642848 (S.D. Ind. Sept. 24, 2024) (dismissing an individual defendant because there was no district where the case could have been originally filed). Plaintiffs allege that Brillion is jointly and severally liable for Hopkin's and Asator's conduct because of his role with

Asator (Filing No. 1-1 at 36–38). However, it is not in the interest of justice to litigate the claims against Hopkins and Asator in this Court and litigate the claims against Brillion elsewhere.

The Court agrees with Brillion's contentions that "[p]artial transfer here (i) is likely to create divergent for[sic] results despite Plaintiffs alleging Brillion is a joint tortfeasor; (ii) may well lead to different substantive law being applied to alleged joint tortfeasors; and (iii) would cause Brillion to incur the additional expense and burden of restarting this case anew in yet another far away district." (Filing No. 91 at 4). Because of this additional burden and the potential of disparate results for joint tortfeasors, transfer of the claims against Brillion is not in the interest of justice.

Moreover, the statutory text of Section 1631 requires transfer of an entire action. Section 1631 specifically authorizes the transfer of an "action or appeal[.]" 28 U.S.C. §1631. The Judicial Panel on Multidistrict Litigation interpreted identical language in 28 U.S.C. § 1404(a)—another transfer statute—to mean that Congress intended to authorize only the transfer of an entire action. "For present purposes, the most significant feature of the statute is that it allows only the transfer of 'actions'". *In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1376–77 (J.P.M.L. 2003). The panel highlighted that this language contrasts with the language of other transfer statutes such as Section 1407 that authorize the transfer of "actions" but also authorize remand for individual "claims" in some situations. *Id*. at 1377. As with Section 1404, Section 1631 contains no language authorizing transfer or remand of "claims" but states only that a court shall transfer an "action or appeal." 28 U.S.C. § 1631. Accordingly, Because the statutory text of Section 1631 and the interests of justice require that the entire case be transferred and there is no district where this case could have been "originally" filed, **dismissal** of the claims against Brillon is proper.

## IV. CONCLUSION

For the reasons discussed above, Brillion's Motion to Dismiss for Lack of Personal Jurisdiction (Filing No. 39) is **GRANTED**. Because transfer is not in the interest of justice, Plaintiffs' claims against Brillion are **dismissed**. **The Clerk is directed** to terminate Defendant Steve Brillion as a party in this litigation.

**SO ORDERED**.

Date: 8/28/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Sean P. Burke
Mattingly Burke Cohen & Biederman LLP
sean.burke@mbcblaw.com

Anthony T. Carreri
Kroger, Gardis & Regas, LLP
acarreri@kgrlaw.com

Jeffrey N. Furminger
Mattingly Burke Cohen & Biederman LLP
jeff.furminger@mbcblaw.com

Jason M. Massaro
The Massaro Legal Group, LLC
jmassaro@tmlglaw.com

Weston E. Overturf
Kroger Gardis & Regas, LLP
woverturf@kgrlaw.com

John M. Powers
john@powerscounsel.com

Seema Ramesh Shah
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sshah@boselaw.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pvink@boselaw.com

Sean T. White
CLAPP FERRUCCI
swhite@seanmclapp.com